John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN M., a minor, through his guardian ad litem, TRACY KELLY; TRACY KELLY, individually and as guardian ad litem for Colin M.; and RON MASSIE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ST. HELENA HOSPITAL dba ST. HELENA HOSPITAL CENTER FOR BEHAVIORAL HEALTH, FRANCIS J. MULLER, M.D., KAISER FOUNDATION HOSPITAL dba KAISER PERMANENTE, JASON ROBERT NAU, M.D., CITY OF VALLEJO, D. JOSEPH, and DOES 1-25, inclusive<br><br>　　　　Defendants. | Case No.: C08-01930 WHA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS AGAINST FRANCIS J. MULLER, JR., M.D. FOR FAILURE TO STATE A CLAIM (FED. RULE CIV. P. RULE 12(B)(6)**<br><br>**Date:**　　August 21, 2008<br>**Time:**　　8:00 a.m.<br>**Courtroom:** 9, 19th Floor |

# TABLE OF CONTENTS

**PAGE**

**INTRODUCTION** .................................................................................................................... 1

**FACTS** ....................................................................................................................................... 3

**ARGUMENT** ............................................................................................................................. 4

    **A.**     **A motion to dismiss should only be granted when plaintiffs can articulate no facts to amend to sustain a cause of action** ...................................................... 4

    **B.**     **The Lanterman-Petris-Short Act granted Dr. Muller the right and privilege to detain Colin M., a minor who was involuntarily confined** ......................... 4

    **C.**     **Under each of the four tests, Dr. Muller was a state actor** ............................. 5

        **1. Dr. Muller was a state actor under the joint-action test** ........................... 5

            *a) California can not delegate its duties to involuntarily confine minors who were initially detained by the police without also conferring state-actor status to ensure the individuals' constitutional rights are protected.*......................................................... 5

            *b) Dr. Muller conspired with public actor and co-defendant D. Joseph to violate Colin's constitutional rights*...................................... 7

            *c) Dr. Muller conspired with public actor and co-defendant D. Joseph to violate Colin's constitutional rights* ................................................. 9

        **2. Dr. Muller was a state actor under the state-compulsion test** .............. 10

        **3. Dr. Muller was a state actor under the public-function test** ................. 11

        **4. Dr. Muller was a state actor under the public-function test** ................. 13

    **D.**     **In the alternative, plaintiffs seek leave to amend under FRCP 15** .............. 14

**CONCLUSION** ......................................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Addington v. Texas*, 441 U.S. 418 (1979). .................................................................................. 7

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) .................................................................... 9

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ...................................................... 14

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ....................................................................................... 11

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001). ............ 2

*Briley v. State of California*, 564 F.2d 849 (9th Cir. 1977) ......................................................... 13

*Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961) ................................................. 5, 8

*Del's Big Saver Foods Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344 (7th Cir. 1986), .................... 9

*Edward W. v. Lamkins,* (2002) 99 Cal.App. 4th 516 .................................................................... 7

*Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995) ...................................................................... 12

*Evans v. Newton*, 382 U.S. 296 (1966) ....................................................................................... 13

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996) ....................................... 10

*Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246 (9th Cir. 1997) ................................................. 4

*Hall v. Quillen*, 631 F.2d 1154 (4th Cir. 1980) ........................................................................... 12

*Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) ..................................................................... 12

*Heater v. Southwood Psychiatric*, 42 Cal.App.4th 1068 (1996) .................................................. 13

*In re Calhoun,* (2004) 121 Cal.App.4th 1315 ............................................................................... 7

*In re Lois M.*, 214 Cal.App.3d 1036 (1989) ................................................................................. 7

*Jackson v. Metropolitan Edison*, 419 U.S. 345 (1974) ............................................................... 11

*Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000) ..................................................... 1, 5, 7, 10

*Life Ins. Co. of N. America v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) ..................................... 11

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ...................................................................... 4

*Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) ............... 10

*Perez. v. Sugarman*, 499 F.2d 761 (2d Cir. 1974) ...................................................................... 14

*Polk County v. Davidson*, 454 U.S. 312 (1981) .......................................................................... 12

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

*Rendell Baker v. Kohn*, 457 U.S. 830 (1982) ................................................................................. 13

*Rockwell v. Cape Cod Hospital*, 26 F.3d 254 (1st Cir. 1994) ......................................................... 11

*Spencer v. Lee*, 864 F.2d 1376 ................................................................................................ 10, 12

*St. Joseph Hospital v. Kuyper*, 146 Cal.App. 3d 1086 (1983), ....................................................... 13

*Taylor v. First Wyoming Bank, N.A.*, 707 F.2d 388 (9th Cir. 1983) ............................................... 13

*Terry v. Adams*, 345 U.S. 461 (1953) ............................................................................................ 13

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ........................................................ 4

*Wayman v. County of L.A.*, 23 Fed.Appx. 770 (9th Cir. 2001) ........................................................ 9

*West v. Atkins*, 487 U.S. 42 (1988) ........................................................................................... 7, 12

**STATUTES**

42 U.S.C. § 1983 ....................................................................................................................*passim*

Cal. Civ. Code § 51.7 ................................................................................................................ 2, 14

Cal. Civ. Code § 52.1 ................................................................................................................ 2, 14

Cal. Wel. & Inst. Code § 5000. ................................................................................................... 1, 4

Cal. Welf. & Inst. Code § 5150 ............................................................................................... 1, 3, 9

Cal. Wel. & Inst. Code § 5152 ............................................................................................ 1, 2, 5, 14

Cal. Wel. & Inst. Code § 5585 .................................................................................................. 1, 4, 5

Fed. R. Civ. Proc. 15 ....................................................................................................................  14

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

# INTRODUCTION

Plaintiffs are not suing Dr. Francis Muller for doing his job or providing "care and treatment" to a patient. Plaintiffs sued Dr. Muller because he was the sole person with authority to involuntarily confine 6-year old Colin M. under California's statutory scheme which creates an inextricable and interdependent relationship between law enforcement, the counties, the state, and private actors who participate in the involuntary detention of minors, initiated and enforced by the police, without parental consent or probable cause. Dr. Muller had no probable cause to believe that Colin, as a result of mental disorder, was (1) a danger to his mother or (2) gravely disabled. Yet he refused to release Colin for almost 48 hours from May 15, 2007 through May 17, 2007.

Although the Lanterman-Petris-Short Act, Cal. Wel. & Inst. Code §§ 5000 *et seq*., ("LPS Act") empowers private psychiatrists to make custody decisions based on a probable-cause analysis, plaintiffs are not arguing that the LPS Act **always** transforms a private psychiatrist's failure-to-release conduct into state action. But on these facts it does. Here, police officer/defendant D. Joseph took Colin into custody to initiate this involuntary commitment without his parents' consent. When the process begins with the police, detainees are essentially under arrest, they are **not** free to leave for 72 hours unless the treating psychiatrist allows them to do so, but they are housed in a psychiatric facility rather than a jail. Here the detention involved a **minor** which essentially rendered 6-year old Colin a ward of the state for the duration of his custody. In this context, Dr. Muller, not a police officer, prosecutor or jailer, held the key to Colin's release. The State granted him this authority, such that it was executed under color of law. *See*, Cal. Wel. & Inst. Code §§ 5150, 5152(d), 5585.50.

Defendant invites this Court to make new law by citing dozens of cases from other Circuits involving county counsel, guardians ad litem, public defenders, and other non-analogous facts. There is no authority that Dr. Muller's conduct did not constitute state action. For reasons that are unclear, defendant omitted to cite the Ninth Circuit case which held that Dr. Muller's conduct—a private doctor's failure to release a patient involuntarily committed to a psychiatric facility—triggers state action. *Jensen v. Lane County*, 222 F.3d 570, 575-76 (9th Cir. 2000).

Dr. Muller qualifies under all of four state-actor tests. Dr. Muller's conduct triggers the joint action and nexus tests under *Jensen v. Lane* and Supreme Court authorities because his conduct was interdependent with the State's by virtue of his sole authority to release an involuntarily detained minor, initiated and enforced by police power, absent parental consent, and without probable cause. Further, he acted in conspiracy with a state actor, Officer D. Joseph, to deprive Colin of his constitutional rights. The state compulsion test is met because the Legislature empowered him to involuntarily detain a minor on the specific bases that he was allegedly suffering from a mental illness and was a danger to his mother. Dr. Muller's custody-based probable-cause decision satisfies the public-function test because he, a private individual, was authorized to detain a minor involuntarily for almost 48 hours by operation of law. Although Dr. Muller would like this Court to focus exclusively on whether a private physician's providing care or treatment or evaluation is exclusively a government duty under the public-function test, that is not the law. The public-function test is not dispositive because a party who satisfies one test is sufficient, even if the same facts do not "loom large" or satisfy another. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 303-04 (2001).

Plaintiffs request leave to amend to specify plaintiffs' theory under Cal. Wel. & Inst. Code § 5152(d) which empowers Dr. Muller alone to release Colin from detention and to include conspiracy language that Dr. Muller shared a common motive to violate Colin's constitutional rights. In addition, plaintiffs seek to amend to allege defendants Kaiser and St. Helena caused these violations by their customs, policies, practices, training, or ratification. Should this Court be inclined to find Dr. Muller is not a state actor, plaintiffs seek to amend to add claims of false imprisonment, assault and battery, and Cal. Civ. Code §§ 52.1, 51.7.

//
//
//
//
//
//

- 2 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

# FACTS

On May 15, 2007, 6-year old Colin M. had a temper tantrum over some crayons, police were contacted by a school employee, and officer D. Joseph detained him under California Welfare & Institutions Code § 5150. (Complaint at ¶¶ 15-17). Officer Joseph transported Colin to Kaiser where he was evaluated by Dr. Nau, involuntarily committed under § 5150, put into four-point restraints, and shot with Ativan without his or his parents' consent. (*Id.* at ¶¶ 17-19).

That night he was involuntarily transferred to St. Helena Hospital dba St. Helena Center for Behavioral Health ("St. Helena") under the care of defendant Francis Muller, M.D. (*Id.* at ¶ 20). Plaintiffs alleged that St. Helena admits children who have been deprived of their liberty under color of state law into its locked facility. (*Id.* at ¶ 6). Francis Muller, M.D. was sued as an agent or employee of St. Helena and that he was authorized to make decisions regarding the status and treatment of minors who were detained under color of state law. (*Id.* at ¶ 7). Plaintiffs further alleged that Dr. Muller acted in concert with state actor, officer D. Joseph. (*Id.* at ¶ 13).

The morning of May 16, 2007 plaintiffs Tracy Kelly and Ron Massie, Colin's parents, went to see their son at St. Helena and take him home. They were told Colin could not be seen until "visiting hours" at noon. (*Id.* at ¶ 21). Colin was frightened and traumatized. (*Id.*) They were told Colin would not be released for at least another two days. (*Id.*) There was no legal reason to detain Colin and Dr. Muller caused Colin's continued false imprisonment. (*Id.*) On May 17, 2007, Colin's parents returned to St. Helena, this time with a lawyer, and ultimately Dr. Muller agreed to release him "against medical advice." (*Id.* at ¶ 22).

Plaintiffs Colin and his parents sued Dr. Nau, Kaiser, St. Helena and Dr. Muller for constitutional violations under 42 U.S.C. § 1983. Dr. Muller moved to dismiss on the basis that his care, treatment, assessment, and detaining Colin did not qualify as state action. Plaintiffs respectfully disagree, and oppose this motion as follows.

//
//
//
//

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

- 3 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

# ARGUMENT

### A. A motion to dismiss should only be granted when plaintiffs can articulate no facts to amend to sustain a cause of action.

The motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A Fed. Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

### B. The Lanterman-Petris-Short Act granted Dr. Muller the right and privilege to detain Colin M., a minor who was involuntarily confined.

If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for § 1983 purposes. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935. The deprivation must be caused by some "right or privilege" created by the State. Second the defendant must qualify as a state actor. *Id.* at 937.

Here the exercise of a right or privilege arises from statutes designed to protect mental-health patients. The California Legislature's statutory scheme for involuntary confinements in a psychiatric facility is set forth in the Lanterman-Petris-Short Act, Cal. Wel. & Inst. Code §§ 5000 *et seq.*, ("LPS Act"). The section defining the involuntary commitment of minors states:

> When any minor, as a result of mental disorder, is a danger to others . . . and authorization for voluntary treatment is not available, a peace officer . . . may, upon **probable cause**, take . . . the minor into **custody** and place him . . . in a facility **designated by the county** and **approved by the State** Department of Mental Health as a facility for seventy-two hour treatment and evaluation of minors. The facility shall make every effort to notify the minor's parent or legal guardian as soon as possible after the minor is **detained**.
>
> The facility shall require an application in writing stating the circumstances under which the minor's condition was called to the attention of the officer . . . and stating that the member of the attending staff, or professional person, and stating that . . . member of the attending staff, or professional person has. . . has **probable cause to believe that the minor is, as a result of mental disorder, a danger to others . . . and authorization for voluntary treatment is not available.**

Cal. Wel. & Inst. Code § 5585.50 (emphasis added); *See also*, *id.* at § 5585.55.

- 4 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

1    Those detained under these statutes, and the corollary to § 5585.50 for adults at Wel. &
2    Inst. Code § 5585.50, may be released **prior** to the 72-hour period if the patient's treating
3    psychiatrist determines, based on personal observations, that the person no longer requires
4    evaluation or treatment, i.e., should no longer be detained. Cal. Welf. & Inst.Code § 5152.

Given this statutory scheme empowering Dr. Muller to continued Colin's involuntary confinement, the next inquiry is whether this scheme and these facts trigger state action.

### C. Under each of the four tests, Dr. Muller was a state actor.

#### 1. Dr. Muller was a state actor under the joint-action test.

The joint-action inquiry focuses on whether the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity, which on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, (1961); *Jensen v. Lane County*, 222 F.3d 570, 573 (9th Cir. 2000). Here the joint action test is met by any one of three independent grounds: (1) the LPS Act created an interdependent relationship between California and Dr. Muller; (2) California has constitutional duties to minor involuntary detainees that it can not delegate to private doctors without also conferring state action; or, (3) Dr. Muller conspired with state actor D. Joseph to violated Colin's constitutional rights.

##### a) *California has an interdependent relationship with Dr. Muller under the LPS Act to continue involuntary custody of a minor placed by the police in a psychiatric facility against his parents' consent.*

In *Jenson v. Lane County*, the Ninth Circuit analyzed whether a private psychiatrist was a state actor for refusing to release an involuntarily committed mental-health patient before the state law's maximum period passed. *Jensen v. Lane County*, 222 F.3d 570, 573 (9th Cir. 2000). The district court granted summary-judgment in favor of a private physician who signed the commitment order **and** refused to release the patient before the maximum time, five days. The case went to trial against the other defendants and the jury found there was probable cause to believe that Jensen was a danger to himself or others during the entire time that he was held, but

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

1   that there was not probable cause to believe that he was mentally ill for the entire time. *Id.* at 573.

2   The plaintiff appealed the ruling as to this doctor on the issue of state action.

3       The *Jensen* court framed the issue as follows: "This court has not had occasion to rule on

4   whether contract services provided by licensed private physicians to municipal governments in

5   the detention and examination of persons brought into treatment facilities by police officers as

6   possible mental patients constitutes state action within the meaning of § 1983."

7   *Id.* at 574. But this contractual relation between the doctor and the facility was three times

8   removed. The *Jenson* case involved a county facility which had a contract with a private hospital,

9   which had a contract with a private doctors' group, which defendant Dr. Robbins was affiliated

10  with, called Psychiatric Associates ("PA").

11      The Ninth Circuit held that Dr. Robbins was a state actor because of his involvement in

12  the statutory civil-commitment process which integrated public **and** private actors to form an

13  interdependent process, which as to Dr. Robbins after the jury's verdict, was triggered by his

14  refusing to release the patient absent probable cause that the patient was mentally ill during his

15  entire confinement. This triggered both the joint participant test and the nexus test.

> The record is clear that **Dr. Robbins and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others.** County employees initiate the evaluation process, there is significant consultation with and among the various mental health professionals (including both PA psychiatrists and county crisis workers), and PA helps to develop and maintain the mental health policies of LCPH. We are convinced that the state has so deeply insinuated itself into this process that there is "a sufficiently close nexus between the State and the challenged action of the [defendant] so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 350, 95 S.Ct. 449.
>
> Although this case falls between lines drawn in other jurisdictions and presents an issue of first impression for this court, under the close nexus/joint action test, we hold that Dr. Robbins' conduct constituted state action.

25  *Id.* at 575-76 (emphasis added).

26      The difference in facts between the *Jenson* case and here is the purported status of the

27  facility in which the mental-health patient was treated, not the status of the private doctor, the

28  police initiating the involuntary detention, the integration of public and private actors, or the

- 6 -

constitutional rights at stake. Indeed, in *Jensen* the determination was made at the summary-judgment level, not a preliminary pleading. A determination that Dr. Robbins was a state actor but Dr. Muller was not makes no sense. Further, it deprives Colin of his constitutional rights because of his inability to select a facility to which he was involuntarily transported by the police, transferred from by Kaiser Vallejo (a Solano County Base Hospital), and detained involuntarily for almost 48 hours without probable cause or parental consent.

Even more apt than in *Jensen*, this case involves a six-year old child, rendering his detention an even more protected, and integrated, process triggering the interdependent finding. By law, in practice and on principal there are additional evaluations that must occur, family evaluations and follow-up treatment recommendations to be made, and a heightened duty to protect our children's well-being and constitutional rights.

> **b) California can not delegate its duties to involuntarily confine minors who were initially detained by the police without also conferring state-actor status to ensure the individuals' constitutional rights are protected.**

The Supreme Court recognized that involuntarily detained individuals enjoy constitutional protections. *See*, *Addington v. Texas*, 441 U.S. 418, 425 (1979). Those rights also include freedom from unlawful seizures (and excessive force) under the Fourth Amendment. *See*, *Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000). In California, they also have the right to exercise informed consent which is protected by common law **and** the state's constitutional right to privacy. *Edward W. v. Lamkins,* (2002) 99 Cal.App. 4th 516, 533; *In re Calhoun,* (2004) 121 Cal.App.4th 1315, 1344. One LPS Act legislative purpose is to "end the inappropriate . . . and involuntary commitment of mentally disordered persons." *Id.* at § 5001. Society's interest in the appropriate certification of mentally disordered individuals is founded both in its interest in assuring public safety and in the concept of *parens patriae* (literally, "father of the people). *In re Lois M.*, 214 Cal.App.3d 1036, 1041 (1989).

The Supreme Court also held the State has a constitutional obligation to provide involuntarily confined individuals adequate medical services because "the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated." *West v. Atkins*, 487 U.S. 42, 54-55 (1988). "It is only those physicians

- 7 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

authorized by the State to whom the inmate may turn." *Id.* The physician's state-actor role turns on the doctor's function within the system, not his terms of employment.

> **It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State**. Whether a physician is on the state payroll or is paid by contract, **the dispositive issue concerns the relationship among the State, the physician, and the prisoner**. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, **and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights**. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*Id.* at pp.s 55-56 (emphasis added).

If treating psychiatrists working in private facilities did not have to comply with the Constitution when the police initiated an involuntarily detention of a minor, without parental consent, those individuals would be precluded from constitutional remedies under 42 U.S.C. § 1983 based on the facility they were detained in, not the guarantee of constitutional rights. The Supreme Court found state action when the state's participation with the private sector condoned this leave-your-rights-at-the-door conduct.

> But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. It is of no consolation to an individual denied the equal protection of the laws that it was done in good faith.

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 724-25 (1961).

Here the State of California empowered private psychiatrists to provide treatment, evaluation, and custody-based decisions for its detained patients. The State authorizes one person, the treating psychiatrist, to release an involuntary confine. The State's legislating out these duties to facilities which are "designated by the county" and "approved by the State" does not abdicate the State of its constitutional duties or strip the State's detainees' ability to vindicate violations of their constitutional rights.

//

//

- 8 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

The same conduct, if it were exercised in another building by the same doctor, would constitute state action. The State benefits equally from Dr. Muller's involuntary-detention-release-decision services provided to detained individuals in private facilities \ as for services provided by contract with a private physician's group in contract with a private facility in contract with a public hospital. The Ninth Circuit in *Jensen v. Lane* determined services provided under the later scenario were state action. The same reasoning should apply to Dr. Muller.

### c) Dr. Muller conspired with public actor and co-defendant D. Joseph to violate Colin's constitutional rights.

The joint action test is **also** satisfied if plaintiffs plead a conspiracy between a police officer and private individuals whose common intent is to violate civil rights. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, (1970) (holding that restaurant owner was state actor because she conspired with police officer and his arrest powers to deny service based on race).

Here, Dr. Muller may be liable if he detained Colin by "rubber-stamping" a Section 5150 already set in force by a police officer. *See, e.g., Wayman v. County of L.A.*, 23 Fed.Appx. 770, 773 (9th Cir. 2001). In *Wayman* the plaintiff alleged Harbor-UCLA accepted him into involuntary custody without independently verifying a police officer's finding of probable cause under Cal. Wel. & Inst. Code § 5150. The court held the plaintiff did not provide evidence that a "rubber-stamping" policy existed to implicate the County's liability under *Monell*. However, the evidence demonstrated there was "culpable conduct by individuals" including doctors. *Id.* at *2. Here the allegation is that Dr. Muller did the same thing because no facts would have supported a probable cause finding during Colin's detention at St. Helena's.

Police enforcement of private action *may* also demonstrate this type of joint action even if the police remain in the background but *could be* called in to apply government force to a situation. *See, Adickes, supra*, 398 U.S. at 152. In *Del's Big Saver Foods Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344 (7th Cir. 1986), the court found a private individual was a state actor because an *ex parte* court order to take over a grocery store to satisfy a lien invited the sheriff to "assist" the private person to carry out the order. The court held that this private person was a state actor, in part, because of this police-power backup. Here, Dr. Muller concedes that not only was this

- 9 -

commitment **initiated** by a police officer, it could also be **enforced** by the police. "Even if they were to speculate that the police would assist in the detention if he tried to leave, such assistance is permissible and does not rise to the level of conspiracy because the Lanterman-Petris-Short Act permits involuntary commitment." (Motion to Dismiss at p. 8:12-14.)

Defendant's authorities do not transform this conspiring state actor back into a private actor. In *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996), a former employee of a private correctional facility brought a § 1983 action against the facility alleging free speech violations because he was terminated for speaking out about safety and security problems. The claim failed under the "joint action" test because the contract between the state and private prison did not govern the prison's employment decisions. Here the interdependence between the counties, state, and Dr. Muller as to the involuntary confinement process specifically governs his authority and the finding he must make to release involuntarily confined minors. *Spencer v. Lee*, 864 F.2d 1376, 1382 involved a *pro se* plaintiff suffering from a poorly pled complaint which failed to allege a conspiracy or name the police officer involved. Here the conspiracy includes a named defendant police officer, D. Joseph.

Plaintiffs believe they have satisfied notice pleading to allege conspiracy. See, *Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1301-1302 (9th Cir. 1999). If necessary, they seek to amend their complaint to describe the joint-action test facts, including how Dr. Muller was involved in an interdependent process involving private and public employees, including his conspiring with state actors such as Officer D. Reeve.

### 2. Dr. Muller was a state actor under the nexus test.

The "nexus" test is met where there is a nexus between the state and the challenged action such that the seemingly private behavior should be treated as the State's conduct. *See, Jensen v. Lane County*, *supra*, 222 F.3d at 575. The nexus test may be satisfied if the challenged decision, here to maintain custody, is "made on the basis of some rule of decision for which the state is responsible." *West*, *supra,* 487 U.S. at 52, FN.10. Here the state is responsible for Dr. Muller's custody decision on these facts.

- 10 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

Dr. Muller cites a plethora of authorities which stand for the proposition that without more, state regulations or public funding do not trigger state action. *Id.* In *Jackson v. Metropolitan Edison*, 419 U.S. 345, 350 (1974), the Court held "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." In *Jackson*, the Court found that the no state action was taken in terminating a customer's electric service before she was afforded notice by a privately owned utility company. *Id.* at pp.s 453-54. In *Life Ins. Co. of N. America v. Reichardt*, 591 F.2d 499, 502, FN 5 (9th Cir. 1979) the court found that California's regulation of the insurance industry did not create state action based on the company's conduct to issue policies: "private carriers decided whether and to whom such policies would issue." *Id.* at 502. In *Blum v. Yaretsky*, 47 U.S. 991, 1004 (1982), the Court held that patients failed to establish, without more, that nursing homes were state actors *because* they received Medicare funding such that their improper conduct, the discharge or transfer of Medicaid patients to lower levels of care, was state action. See also, *Rockwell v. Cape Cod Hospital*, 26 F.3d 254, 258-259 (1st Cir. 1994) (holding that without more, a hospital receiving Medicare funds did not satisfy the nexus test).

Unlike *Jackson* and *Reichardt*, plaintiffs do not suggest there is a nexus between a state regulation overseeing Dr. Muller's practices. Unlike *Blum* and *Rockwell*, plaintiffs do not contend that public funding is the critical fact. Instead, the nexus is satisfied on the same facts described in the joint-action test. *See*, *Jenson, supra* (blending these tests into one).

### 3. Dr. Muller was a state actor under the state-compulsion test.

The state-compulsion test provides that state action may be found where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The question here is not whether the law compels involuntarily commitments as a general notion, but rather, whether the law compels Dr. Muller's authority to detain minor Colin M. in custody for almost 48 hours. Plaintiffs contend the LPS Act's language and requirements cited above, combined with the constitutional protections triggered by this type of police-initiated involuntarily detention of a minor, satisfy this test.

- 11 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

Defendant grossly mischaracterizes the effect of *Polk County v. Davidson*, 454 U.S. 312, 321-322 on this test and this case. The Court held that a public defender was not state actor because of his unique role of being a State's adversary despite his public employment; the holding did **not** turn on the fact that he was also a lawyer who exercised his professional judgment. *Id.* at 321-322. The Supreme Court struck down Dr. Muller's theory. In *West v. Atkins* it held that a doctor's providing medical services to detained individuals did not exclude him from state action because his services were based on his professional judgment. *West v. Atkins*, 487 U.S. 42, 51 (1988). This decision was based, in part, on the fact that the doctor was acting in "close cooperation and coordination" with other prison officials in a "joint effort" to satisfy correctional standards and practices described in the institution's Manual governing prison health care, and, the American Medical Association Standard for Health Services in Prisons. In sum, "Doctor Atkins' professional obligations certainly did not oblige him to function as "the State's adversary." *Polk County*, 454 U.S., at 323, n. 13, 102 S.Ct., at 452, n. 13. We thus find the proffered analogy between respondent and the public defender in Polk County unpersuasive." *Id.*

Defendant's reliance on *Spencer v. Lee*, 864 F.2d 1376, 1377-1378 (7th Cir. 1989) is also misplaced because the holding turned on different parties and different issues. Neither the physicians who initiated the commitment (Dr. Nau) or refused release (Dr. Muller) were alleged to have conducted the same misconduct, or, made the initial detention decision, or, were named defendants. *Id.* at 1383. Instead, the alleged misconduct was treatment-based. The in-depth and multiple dissenting opinions demonstrate the non-binding decision's flaws.

Defendants also cite authorities which do not apply to the facts at bar because they relate to involuntary confinements initiated by *private* individuals, not police officers, or were court-appointed experts or examiners. *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir. 1992) (holding patient's husband who enlisted the wife's private doctor to sign a certificate to show his wife was "mentally ill" did not trigger state action by private doctors or hospital); *Ellison v. Garbarino*, 48 F.3d 192, 196-197 (6th Cir. 1995) (holding Tennessee statute did not compel or encourage wife to enlist officers to assist her in pursuing husband's involuntary commitment); *Hall v. Quillen*, 631 F.2d 1154, 1155-1156 (4th Cir. 1980) (holding a private physician appointed by the court is not a

- 12 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

state actor under § 1983); *Briley v. State of California*, 564 F.2d 849, 855-56 (9th Cir. 1977) (holding one medical examiner of a castrated prisoner was and one was not a state actor).

Here private physicians who treat involuntarily confined individuals are not adversaries of the State. They also work in concert, in an atmosphere of interdependence to achieve the state's respective goals—public safety from and healthcare for detained psychiatric patients. Indeed, they are delegated the constitutional duties of the State to preserve constitutional rights and by law, must find probable cause to further detain. On these facts, this test is met.

### 4. Dr. Muller was a state actor under the public-function test.

Under the public-function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966); *Terry v. Adams*, 345 U.S. 461, 484 (1953). The function at issue must be both traditionally and exclusively governmental. *Rendell Baker v. Kohn*, 457 U.S. 830, 842 (1982).

Here there is no dispute that involuntary confinement as a general notion, or, making custody decisions to release involuntarily confined detainees, are functions that are governmental in nature. Indeed, a private individual cannot deprive individuals of liberty for over 48 hours. The question is then whether this specific function is traditionally and exclusively governmental.

Defendant's authorities do not apply to the facts and law here. *Heater v. Southwood Psychiatric*, 42 Cal.App.4th 1068, 1071 (1996) involved were a detention initiated by patient's family and did not decide state action. *St. Joseph Hospital v. Kuyper*, 146 Cal.App. 3d 1086, 1091 (1983), held that county counsel had a **duty** and authority to appear and defend such habeas proceedings but did not relate to a psychiatrist's decision to retain custody.

This is not a case of providing **care** to the elderly and infirm, it is about involuntary **custody** decisions. Defendant's reliance on *Taylor v. First Wyoming Bank, N.A.*, 707 F.2d 388, 390 (9th Cir. 1983) is misplaced. The court held that private nursing-home employees were not state actors because the "care of the elderly and infirm has traditionally been a function associated with the family and not with sovereignty." *Id.* at 390. Instead, *Taylor* strongly supports the plaintiffs' position. *Taylor* also stated when officials placed children in private child-caring

- 13 -

PLAINTIFFS' OPPOSITION TO DEF'S MOTION TO DISMISS CLAIMS AGAINST DR. MULLER

institutions, those employees were acting under color of state law because the State was "providing the care *through* the private institution." *Id.*; *see also*, *Perez. v. Sugarman*, 499 F.2d 761 (2d Cir. 1974).

When children are involuntarily detained at private hospitals such as St. Helena, the State is detaining and providing care through the institution and through Dr. Muller. The defendant's failure to release him from custody satisfies this test.

### D. In the alternative, plaintiffs seek leave to amend under FRCP 15.

If already served with a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. Leave to amend should be freely granted. Fed. R. Civ. Proc. 15; *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Plaintiffs request leave to amend to specify plaintiffs' theory under Cal. Wel. & Inst. Code § 5152(d) which empowers Dr. Muller alone to release Colin from detention and to include conspiracy language that Dr. Muller shared a common motive to violate Colin's constitutional rights. In addition, plaintiffs seek to amend to allege defendants Kaiser and St. Helena caused these violations by their customs, policies, practices, training, or ratification. Should this Court be inclined to find Dr. Muller is not a state actor, plaintiffs seek to amend to add claims of false imprisonment, assault and battery, and Cal. Civ. Code §§ 52.1, 51.7.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request this Court deny this motion to dismiss, especially since they have satisfied all four state-actor tests, and in particular, the joint-action test. In addition, plaintiffs respectfully request leave to amend as noted.

**DATED:** July 31, 2008                                               **SCOTT LAW FIRM**


                                                                      By:/s/ Lizabeth N. de Vries
                                                                      LIZABETH N. dE VRIES
                                                                      Attorney for Plaintiffs
                                                                      COLIN M., TRACY KELLY
                                                                      and RON MASSIE

F:\Cases\Cases - Active\Massie\Pleadings\OppnToMtntoDismissDrMuller.073108.FINAL.doc

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109