1  JOSEPH S. PICCHI, ESQ. (State Bar No. 157102)
   AARON T. SCHULTZ, ESQ. (State Bar No. 222949)
2  GALLOWAY, LUCCHESE, EVERSON & PICCHI
   A Professional Corporation
3  1676 North California Blvd., Suite 500
   Walnut Creek, CA 94596-4183
4  Tel. No. (925) 930-9090
   Fax No. (925) 930-9035
5  E-mail: aschultz@glattys.com

6  Attorneys for Defendant
   FRANCIS J. MULLER, JR., M.D.
7

8                IN THE UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 COLIN M., a minor, through his guardian ad          Case No.  C 08-01930 WHA
   litem, TRACY KELLY; TRACY KELLY,
12 individually and as guardian as litem for COLIN             The Honorable William H. Alsup
   M.; and RON MASSIE,
13
           Plaintiff,                                 **DEFENDANT FRANCIS J. MULLER, JR.,
14                                                    M.D.'S REPLY TO PLAINTIFF'S
       vs.                                            OPPOSITION TO DEFENDANT MULLER'S
15                                                    MOTION TO DISMISS**
   ST. HELENA HOSPITAL dba ST. HELENA
16 HOSPITAL CENTER FOR BEHAVIORAL
   HEALTH, FRANCIS J. MULLER, M.D.,                   **Date:** August 21, 2008
17 KAISER FOUNDATION HOSPITAL dba                     **Time:** 8:00 a.m.
   KAISER PERMANENTE, JASON ROBERT                    **Courtroom:** 9, 19th Floor
18 NAU, M.D., CITY OF VALLEJO, D. JOSEPH,
   and DOES 1-25, inclusive,
19
           Defendants.
20
   _____
21

GALLOWAY, LUCCHESE,
EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**                      100-8312/ATS/376262.doc

# I. INTRODUCTION

Despite plaintiffs' claim to the contrary, they are suing defendants simply for doing their job. Plaintiffs have taken the position that any physician who makes the decision to involuntarily detain a patient based on their determination that they are a threat to themselves or others, or gravely disabled, is transformed into a state actor, and subject to liability under 42 U.S.C. § 1983. This position is incompatible with the weight of authority and contravenes the stated purpose of Section 1983.

# II. LAW AND ARGUMENT

## A. SECTION 1983 WAS NOT INTENDED TO REDRESS ALLEGED WRONGS PERPETRATED BY PRIVATE INDIVIDUALS.

The purpose of 42 U.S.C. § 1983 is to deter state actors from using badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole* 504 U.S. 158, 161 (U.S.Miss.,1992). This section is applicable only where deprivation is accomplished under color of law and does not protect one from invasion of his private rights by individual action. *Schetter v. Heim* 300 F.Supp. 1070, 1074 (D.C.Wis. 1969). As noted by the court in *Jensen v. Lane County,* 222 F.3d 570, 574 (C.A.9 (Or.),2000), "[t]he Supreme Court has warned that '[c]areful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.'" *Id.,* quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936 (U.S.Va., 1982).

As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that "most rights secured by the Constitution are protected only against infringement by governments," *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (U.S.N.Y., 1978). As the Court said in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974):

> In 1883, this Court in the Civil Rights Cases, [citation omitted], affirmed the essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield.

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

1

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc

1  *Lugar, supra,* 457 U.S. at 936, quoting *Jackson v. Metropolitan Edison Co.*, *supra,* 419 U.S. at
2  349.  As noted by the court in *Lugar,* the party charged with the deprivation of a constitutional
3  right under Section 1983 "must be a person who may fairly be said to be a state actor. This may
4  be because he is a state official, because he has acted together with or has obtained significant
5  aid from state officials, or because his conduct is otherwise chargeable to the State. Without a
6  limit such as this, private parties could face constitutional litigation whenever they seek to rely
7  on some state rule governing their interactions with the community surrounding them." *Lugar,*
8  *supra,* 457 U.S. at 937.

9  In this case, plaintiffs in essence assert that a private physician who is presented with a
10 patient by the police instantly becomes a state actor if he chooses to treat the patient.  The clear
11 intent of this position is to establish liability under Section 1983 as against a private actor in
12 order to evade state tort law restrictions on suits against health care providers.  This places all
13 physicians in an untenable position that forces them to become involuntary state actors,
14 abandoning the protections provided by state tort law, and subjecting themselves to potential
15 liability under Section 1983, or commit malpractice by refusing to treat a patient or prematurely
16 releasing a necessary hold.

17 With respect to Dr. Muller, the state action is even more remote.  He is alleged to have
18 received the plaintiff from another private hospital.  In Dr. Muller's situation, plaintiffs argue that
19 not only those private physicians who initially receive a patient are state actors, but every health
20 care provider that receives or treats the patient until he is ultimately released.  Plaintiffs' position
21 is a radical departure from all pertinent authority and calls for a vast extension of liability under
22 Section 1983.  This position disregards the purpose of Section 1983 and is unsupported by
23 relevant case law.

24 **B. PLAINTIFFS HAVE IGNORED THE CLEAR WEIGHT OF AUTHORITY THAT HAS HELD THAT A PRIVATE PHYSICIAN THAT PLACES AN INVOLUNTARY HOLD ON A PATIENT IS GENERALLY NOT CONSIDERED A STATE ACTOR.**
25

26 In their attempt to transform Dr. Muller from a private citizen into a state actor, plaintiffs
27 have cherry picked portions of several cases across a diversity of jurisdictions; however, they
28 can point to no case that has extended state actor status to a non-contracted private physician

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

2

**C 08-01930 WHA:  DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**     100-8312/ATS/376262.doc

exercising his independent judgment. Federal circuits that have considered cases similar to the present action are unanimous in ruling that a private doctor who is involved with the involuntary commitment of a person pursuant to a state statute is not a "state actor" for purposes of § 1983 liability. *See Milliken v. Reid* 2007 WL 601627, 8 (D.S.C.) (D.S.C.,2007); *Hall v. Quillen,* 631 F.2d 1154, 1155-56 (4th Cir.1980); *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 257 (1st Cir.1994); *Dahl v. Akin,* 630 F.2d 277, 282-83 (5th Cir.1980); *Ellison v. Garbarino,* 48 F.3d 192, 196 (6th Cir.1995); *Spencer v. Lee,* 864 F.2d 1376 (7th Cir.1989); *Harvev v. Harvev,* 949 F.2d 1127 (11th Cir.1992).

### 1. The case of *Jensen v. Lane County* is easily distinguishable from the case at hand.

A case central to plaintiffs' argument is *Jensen v. Lane County, supra,* 222 F.3d 570. The *Jensen* case is clearly distinguishable on its facts. In *Jensen*, shortly before midnight April 15, 1995, plaintiff Jensen was arrested for "menacing with a firearm" after he pointed a gun out of his car window at a pedestrian. Officers apprehended Jensen and deemed it necessary for their safety to handcuff him. The officers found a loaded automatic handgun and an open can of beer in the vehicle. Jensen was uncooperative, smelled of alcohol, and had an unsteady gait. Jensen told the officers he was taking various medications for conditions including depression. Jensen was booked at the Lane County adult corrections facility ("LCAC"). *Id.* at 572 – 573.

On April 17, after being in custody for two days, Richard Sherman, a senior mental health specialist employed by Lane County, received information from the jail that Jensen's work supervisor, Putschler, who was also a county employee, had called to report serious concerns about Jensen's recent behavior, which included: bringing a gun to work, commenting empathetically about "post-office" shootings by disgruntled employees, and drinking alcohol. Putschler reported that co-workers had felt threatened by these actions. *Id.* at 572 – 573.

Sherman reviewed Jensen's arrest documents and other jail information and met with Jensen. After this meeting, and in light of the information previously obtained, Sherman concluded that probable cause existed to believe that Jensen was a danger to himself or others because of depression, paranoia, and alcoholism. Pursuant to his belief that he had a statutory

3

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc

duty to do so, Sherman brought the Jensen case to the attention of Dr. Robbins, a contract psychiatrist affiliated with a private group called Psychiatric Associates ("PA"), and consulted with Dr. Ekanger, a senior mental health specialist, also employed by Lane County. Sherman recommended that Jensen be held at Lane County Psychiatric Hospital ("LCPH") for evaluation. *Id.* at 572 – 573.

LCPH is a county facility that has a contract with private Sacred Heart General Hospital ("SHGH") under which the hospital provides administration and hospital staff to the county. On April 17, relying on police reports and the information obtained from Sherman, but without personally examining Jensen, Dr. Robbins signed the order detaining Jensen for evaluation pursuant to Oregon Revised Statute 426.232.  *Id.* at 572 – 573.

While Jensen was at LCPH, Dr. Ekanger conducted an investigation to determine whether to pursue statutory involuntary commitment proceedings before the court. Dr. Ekanger concluded that there was insufficient evidence to proceed. Dr. Robbins agreed that Jensen was no longer mentally ill and should be released. Dr. Robbins' notes state: "No evidence of mental illness seen during stay here. No dx made. MMPI [a psychological test] not yet available. D/C [discharge] to LCAC [the jail]." *Id.* at 572 – 573.

Jensen was released from LCPH on April 21, 1995 (the fifth day of his detention for evaluation). Dr. Robbins told Jensen at that time that he (Dr. Robbins) had been prepared to release Jensen "a couple of days ago." *Id.* at 572 – 573.

Jensen then filed an action pursuant to § 1983 alleging that Dr. Robbins and the other named defendants had violated his constitutional rights by ordering him admitted to LCPH without due process of law. Jensen also asserted, remembering Dr. Robbins' comment at the time of his release, that the defendants violated his rights by continuing his involuntary detention beyond the reasonable time when the defendants, including Dr. Robbins, could no longer have had probable cause to detain him.  *Id.* at 572 – 573.

In its decision, the *Jensen* court noted that it had not had occasion to rule on whether contract services provided by licensed private physicians to municipal governments in the

//

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

4

**C 08-01930 WHA:  DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc

detention and examination of persons brought into treatment facilities by police officers as possible mental patients constitutes state action within the meaning of Section 1983. *Id.* at 574.

Under the specific facts of the *Jensen* case, the court found that the private physician contracted by the County and working at the County hospital, Dr. Robbins and the County through its employees had undertaken a complex and deeply intertwined process of evaluating and detaining individuals who were believed to be mentally ill and a danger to themselves or others. As explained by the court, County employees initiate the evaluation process, and there was significant consultation with and among the various mental health professionals (including both PA psychiatrists and county crisis workers), and the PA helped to develop and maintain the mental health policies of LCPH. Given these facts the court was convinced that the state has so deeply insinuated itself into this process that there was a sufficiently close nexus between the State and the challenged action of Dr. Robbins so that the action of the latter may be fairly treated as that of the State itself. *Id.* at 575.

Comparing the facts of the *Jensen* case to the allegations in the present complaint it is clear that several important distinctions exist. First, all of the defendants in *Jensen,* other than Dr. Robbins, were actual employees of the county, and they were responsible for making the decision to place the initial hold on Mr. Jensen. In the present case the only county employees involved were the police officers, no county mental health staff are alleged to have been involved in evaluating plaintiff and recommending that he be held or hospitalized. Second, the *Jensen* plaintiff had been actually arrested and was in jail when he was evaluated by county mental health workers then sent to a county hospital to be seen by a contracted doctor for the purposes of a psych hold. When the hold was lifted Mr. Jensen was returned to jail. He was in effect in custody the entire time. In the present case, plaintiff was only briefly in the custody of the police and when he was handed over to Kaiser he was no longer in police custody and neither the police nor the county had any say on what would happen to him next. He was then transferred from one private facility to another private facility and when plaintiff was released, he was not released to the county or the police; he was released to his parents. Finally, and perhaps most importantly, Dr. Robbins was contracted with the county, he had voluntarily

5

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**    100-8312/ATS/376262.doc

entered into a preexisting contractual arrangement with the county to evaluate and treat county inmates at a county hospital. No such arrangement is alleged or existed here between the state and Dr. Muller.

The distinction between the Jensen and the present case is emphasized by later cases citing *Jensen*. Specifically, in *Nash v. Lewis,* L 2966913, 1 -2 (D.Or.,2004), a case whose opinion was approved by Judge Hogan, the same author of the *Jensen* opinion, plaintiff had alleged in his complaint the following allegations in support of his Section 1983 claim:

> Dr. Harris is a physician who at all relevant times worked in the Rogue Valley Medical Center.
>
> After plaintiff was arrested, he was transported to Rogue Valley Medical Center. Upon information and belief, defendants Lehman and/or Lewis advised Dr. Harris, an emergency room physician, that plaintiff had threatened to shoot children at a local school, and had threatened to kill Attorney General Ashcroft and President Bush. These statements were false. In reliance upon these statements, Dr. Harris issued a "Notice of Emergency Hospitalization by a Physician," which resulted in plaintiff's confinement at Rogue Valley Medical Center.
>
> By ORS 426.232, or other longstanding policy, custom, or practice, Dr. Harris was empowered by the State of Oregon to make the decision as to whether to hold plaintiff against his will in a facility for the treatment of mental illness. Dr. Harris executed a "Notice of Mental Health Emergency Hospitalization by a Physician," which commenced a process for the civil commitment of plaintiff pursuant to OAR 309-033-240. Upon information and belief, Dr, Harris did not conduct a "face-to-face examination" within the meaning of OAR 309-033-0250 before determining to hold plaintiff against his will. Upon information and belief, Dr, Harris did not consult with a second physician concerning the involuntary hospitalization of plaintiff until after the involuntary hospitalization of plaintiff had commenced, as required by ORS 426.232. In support of her decision, Dr. Harris reported in the Notice that plaintiff " 'threatened to shoot children at a local elementary school. All Rogue Valley School Districts were closed as a result. Threatened to kill Ashcroft and President Bush." '
> These statements were all false, and were not based upon any face-to-face examination of plaintiff. By all appearances, Dr. Harris relied exclusively upon the statements of defendant Lehman and/or Lewis in lieu of an independent investigation into the circumstances of plaintiff. Dr. Harris did not afford plaintiff the rights required under ORS 426.100(3), 426.234, 426.385, and OAR 309-033-0270.

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA  94596
(925) 930-9090

6

**C 08-01930 WHA:  DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc

Following a hearing regarding his involuntary civil commitment, the presiding judgment found insufficient evidence and dismissed the petition for commitment. *Nash* at 1 – 2.

*Nash* defendant, Dr. Harris, moved to dismiss the action. In opposition to the motion to dismiss plaintiff cited the *Jensen* case as controlling. The court found that, in contrast to the facts present in *Jensen*, the allegations in plaintiff's complaint, as set forth above, and the assertions of fact made in his response to the motion to dismiss, failed to allege facts which show that defendant Harris was a state actor when she involuntarily committed plaintiff. *Nash* at 3 – 4.

### 2.   In cases factually similar the present action, courts have routinely found no state action on the part of a private physician.

In *Pino v. Higgs* 75 F.3d 1461 (C.A.10 (N.M.),1996) plaintiff brought a Section 1983 action against social therapist, emergency room physician, two police officers, and deputy sheriff claiming that they violated her constitutional rights by taking her from her home and transporting and detaining her for emergency mental health evaluation at two hospitals. The Court of Appeals, held that: (1) therapist did not act under color of state law by informing police that individual may have needed help and recommending that she be taken to hospital for psychiatric evaluation; (2) emergency room physician at private hospital did not act under color of state law in admitting individual to hospital or by certifying individual for transport under New Mexico's commitment statute; (3) probable cause standard applies when determining validity of government's seizure of person for mental health reasons; (4) police officers acted reasonably and in accordance with state law in detaining and transporting individual to hospital and were entitled to qualified immunity; (5) deputy sheriff acted reasonably and in accordance with state law in transporting individual from one hospital to another and was entitled to qualified immunity; and (6) police officers and deputy sheriff did not violate individual's procedural or substantive due process rights.

In evaluating plaintiff's claims against the ER physician, the court held that a private physician who certifies a person for purposes of New Mexico's involuntary commitment statute is not subject to § 1983 liability, even when a state police officer responds by transporting or

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

7

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc

detaining that person. Citing *Blum v. Yaretsky,* 457 U.S. 991, 992 - 993 (U.S.N.Y., 1982.), the *Pino* court recognized that the Supreme Court held in, a state is not responsible for decisions that "ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State." *Pino, supra,* 75 F.3d at 1466.

The *Pino* court further recognized that two other circuits had concluded that private party actions under state statutes that permit but do not compel, encourage, or pressure a private physician to execute certificates authorizing involuntary mental health examinations do not constitute state actions. *Id.* at 1466 – 1467, *citing, Harvey v. Harvey,* 949 F.2d 1127, 1130-31 (11th Cir.); *Spencer v. Lee,* 864 F.2d 1376, 1379 (7th Cir.). For reasons similar to the reasons discussed in those cases, the *Pino* court concluded that Dr. Weiss' certification for transport under the state holding statutes did not constitute state action.

Similarly, in *Gabbard v. First Tennessee Bank* 2007 WL 2263082 1 (E.D.Tenn.,2007), the court found no state action on the part of a private physician in another Section 1983 case. There plaintiff alleged that on July 16, 2004, he entered First Tennessee Bank to withdraw several thousand dollars in cash, and presented his "First Resource" business card to a bank employee. Upon being told that the bank could not comply with his request, plaintiff stepped out to his car to retrieve a canvas bag which contained other credit cards. Upon returning inside the bank, plaintiff was searching through his canvas bag when approached by two officers of the Knoxville Police Department. Plaintiff alleged that the "police had been summoned by employees of the bank who, not directly involved with the plaintiff's transaction, had grossly misjudged the situation and overreacted to it." *Id.* at 1.

The complaint went on to state that the police officers and employees of the bank expressed concern about detaining plaintiff for substance testing or other evaluation. Plaintiff voiced his objection, but volunteered to go to a medical facility for evaluation "in order to resolve the matter peaceably." Plaintiff walked aboard a waiting ambulance and was transported to UT Medical Center. The complaint alleges that plaintiff was detained against his will at UT Medical Center and subjected to medical tests and experimental treatment in violation of his constitutional rights. Specifically, plaintiff alleges that upon arriving at UT Medical Center and

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

8

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**     100-8312/ATS/376262.doc

entering the restroom, Jane Doe entered the restroom behind plaintiff and attempted to secure a urine sample without plaintiff's permission. The complaint further alleges that Jane Doe and other UT Medical Center personnel then restrained plaintiff and administered "unknown drugs and unspecified tests" to him despite his objections. Plaintiff further alleges that UT Medical Center held him for seven days until he "feigned his delight at the much needed rest" in order to get discharged.

UT Medical Center moved to dismiss on the grounds that neither it, nor "Jane Doe", were state actors. *Id.*

In analyzing the parties' arguments, the court recognized the facts alleged in the complaint were insufficient to demonstrate that defendants conduct could be fairly attributable to the state under any of the test delineated by the Supreme Court. The court went on the find that the majority of courts to consider the issue have held that involuntary commitment by private physicians pursuant to a state statute does not result in state action. *Id.* at 3, citing, *Ellison v. Garbarino*, *supra,* 48 F.3d 192; *Rockwell v. Cape Code Hosp.*, *supra,* 26 F.3d 254; *Harvey v. Harvey*, *supra,* 949 F.2d 1127; *Spencer v. Lee*, *supra,* 864 F.2d 1376.

### 3. The courts decision in *Polk v. Dodson* was not based solely on the special relationship between the government and the Public Defender.

Plaintiffs' claims that the case of *Polk County v. Dodson*, 454 U.S. 312 (1981), turned only upon the special relationship that the PD has to the state, this is not the case. The issue with respect to this special relationship was one part of the analysis, however, the first part of the analysis by the Polk court centered upon the fact that a lawyer has a duty to represent the best interests of his or her client regardless of outside factors. Physicians have the same obligation to their patients, and plaintiffs can not seriously maintain that a physician has less of an obligation to his patients than a lawyer does to his clients. This being the case, the Polk court's reasoning that this independence required as part of the profession militates against finding that a physician is a state actor when he is treating a patient using his independent judgment.

9

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**     100-8312/ATS/376262.doc

## C. PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUPPORTING A CLAIM OF CONSPIRACY BETWEEN DR. MULLER AND THE STATE.

To prove a conspiracy between the government and Dr. Muller under Section 1983, plaintiffs must show "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.1989). No allegations supporting such a finding are alleged, and plaintiffs claim that she could support a conspiracy claim by alleging that Dr. Muller and the government had a "common motive" is also insufficient to support a conspiracy claim.

## III. CONCLUSION

Based upon the foregoing, defendant Dr. Muller respectfully requests this Court dismiss plaintiffs' claims against Dr. Muller.

Dated: August 7, 2008

                GALLOWAY, LUCCHESE, EVERSON & PICCHI

By: */s/ Aaron T. Schultz*
    AARON T. SCHULTZ, ESQ.
Attorneys for Defendant
FRANCIS J. MULLER, JR., M.D.

GALLOWAY, LUCCHESE, EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

10

C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS

100-8312/ATS/376262.doc

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  LAW AND ARGUMENT................................................................................................1

     A.   SECTION 1983 WAS NOT INTENDED TO REDRESS ALLEGED
          WRONGS PERPETRATED BY PRIVATE INDIVIDUALS. ...................................1

     B.   PLAINTIFFS HAVE IGNORED THE CLEAR WEIGHT OF AUTHORITY
          THAT HAS HELD THAT A PRIVATE PHYSICIAN THAT PLACES AN
          INVOLUNTARY HOLD ON A PATIENT IS GENERALLY NOT
          CONSIDERED A STATE ACTOR. ........................................................................2

          1.   The case of *Jensen v. Lane County* is easily distinguishable from
               the case at hand. ...........................................................................................3

          2.   In cases factually similar the present action, courts have routinely
               found no state action on the part of a private physician............................7

          3.   The courts decision in *Polk v. Dodson* was not based solely on the
               special relationship between the government and the Public
               Defender. ......................................................................................................9

     C.   PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUPPORTING A
          CLAIM OF CONSPIRACY BETWEEN DR. MULLER AND THE STATE. ...........10

III. CONCLUSION ...........................................................................................................10

GALLOWAY, LUCCHESE,
EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

i

**C 08-01930 WHA:  DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**                     100-8312/ATS/376262.doc

1

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Yaretsky,* 457 U.S. 991 (U.S.N.Y., 1982.) ................................................................................8

*Dahl v. Akin,* 630 F.2d 277 (5th Cir.1980) .............................................................................3

*Ellison v. Garbarino,* 48 F.3d 192 (6th Cir.1995) ..............................................................3, 9

*Gabbard v. First Tennessee Bank* 2007 WL 2263082 1 (E.D.Tenn.,2007) ........................8, 9

*Hall v. Quillen,* 631 F.2d 1154, (4th Cir.1980) .......................................................................3

*Harvev v. Harvev,* 949 F.2d 1127 (11th Cir.1992) .............................................................3, 9

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) .................................................1, 2

*Jensen v. Lane County,* 222 F.3d 570, (C.A.9 (Or.), 2000) ............................................. passim

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (U.S.Va., 1982) ..............................................1, 2

*Milliken v. Reid* 2007 WL 601627, 8 (D.S.C.) (D.S.C., 2007) ..............................................3

*Nash v. Lewis,* L 2966913, 1 -2 (D.Or.,2004) ......................................................................6, 7

*Pino v. Higgs* 75 F.3d 1461 (C.A.10 (N.M.),1996) ..............................................................7, 8

*Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ........................9

*Rockwell v. Cape Cod Hosp.,* 26 F.3d 254 (1st Cir.1994) ...................................................3, 9

*Schetter v. Heim* 300 F.Supp. 1070 (D.C.Wis. 1969) ..............................................................1

*Spencer v. Lee,* 864 F.2d 1376 (7th Cir.1989) ................................................................3, 8, 9

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.1989) ..............10

*Wyatt v. Cole* 504 U.S. 158 (U.S.Miss.,1992) .........................................................................1

**Statutes**

42 U.S.C. §1983 ............................................................................................................... passim

**Other Authorities**

Oregon Revised Statute 426.232 ..............................................................................................4

GALLOWAY, LUCCHESE,
EVERSON & PICCHI
1676 North California Blvd.
Suite 500
Walnut Creek, CA 94596
(925) 930-9090

ii

**C 08-01930 WHA: DEFENDANT FRANCIS J. MULLER, JR., M.D.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MULLER'S MOTION TO DISMISS**

100-8312/ATS/376262.doc